IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.                              CRIMINAL ACTION NO. 2:14-cr-00115

DAVID N. HERNDON,

               Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is the determination of whether there is a factual basis for Defendant's plea. For the reasons discussed herein, the Court finds that there is no factual basis for the plea. As such, the Court **REJECTS** Defendant's plea.

### *I.  Background*

This matter relates to a series of unlawful schemes involving bribes, kickbacks, and other financial crimes centered at Mountain Laurel Mining Complex in Sharples, West Virginia ("Mountain Laurel"). "From late 2005 through and until at least early 2014, [Defendant] owned and operated MAC Mine Service, Inc." ("MAC"), which provided contract labor at Mountain Laurel. (ECF No. 11, Ex. B at 1.) "The coal miners provided by [MAC] were employees of [MAC]," which "charged a fee to [Mountain Laurel] for providing such labor." (*Id.*) Mountain Laurel was "a subsidiary of Arch Coal, Inc." ("Arch Coal") and Arch Coal made payments to MAC for the services it provided at Mountain Laurel. (*Id.*)

1

"Beginning sometime in early 2009," Defendant entered into a kickback scheme with the general manager of Mountain Laurel—David Runyon (the "Scheme"). (*Id.*) At the outset of the Scheme, Runyon "demanded that [Defendant] start paying $10,000 a quarter in cash kickbacks in order for [MAC] to retain the exclusive right to provide contract labor services" at Mountain Laurel. (*Id.*) "[Defendant], knowing that the payments were illegal and the Mountain Laurel contract was otherwise lucrative, agreed and did pay [Runyon] on a quarterly basis." (*Id.* at 1–2; *see also* ECF No. 45 ¶ 14 ("[Defendant] believed that the payments to Mr. Runyon were illegal, in that Mr. Runyon was extorting him."); ECF No. 35 at 3 ("[Defendant] knew that paying the kickback was wrong . . . .").)

"[MAC] maintained a business checking account at Logan Bank & Trust" (the "LB&T Account"). (ECF No. 11, Ex. B at 1.) From the beginning of the Scheme, "[MAC] continued to receive payments from [Arch Coal], which were deposited into the [LB&T Account]." (*Id.* at 2.) "The payments were proceeds of the [Scheme]." (*Id.*) "To generate the cash to pay [Runyon], [Defendant], either himself or someone at his direction, withdrew $10,000 in cash from the [LB&T Account]." (*Id.*)

"[I]n the late spring or early summer of 2012," Runyon increased Defendant's kickback payments to $20,000. (*Id.* at 2–3.) "Beginning in June 2012, [Defendant], either himself or someone at his direction, began withdrawing $20,000 a month in cash from the [LB&T Account]." (*Id.* at 3.) "For example, on January 30, 2013, Mr. Herndon cashed a $20,000 check at the Fountain Place Mall branch of [Logan Bank & Trust] on the [LB&T Account] to make a kickback payment to [Runyon]." (*Id.*)

2

The Scheme ended "[s]ometime in the early part of 2013" when "[Defendant] decided to stop making the cash kickback payments to [Runyon]." (*Id.*) Defendant admitted to law enforcement that, "[b]etween 2009 and February 2013, . . . he paid [Runyon] approximately $340,000 in illegal kickbacks." (*Id.*)

On May 30, 2014, the United States filed an Information against Defendant, which charges him with engaging in an unlawful monetary transaction "[o]n or about January 30, 2013" in violation of 18 U.S.C. § 1957. (ECF No. 1 at 4.) Defendant entered a plea of guilty to the charge contained in the Information on July 18, 2014. (ECF No. 8.) The Court deferred finding a sufficient factual basis for Defendant's plea at the plea hearing. (*Id.*)

On May 27, 2015, the Court entered an order (the "Order") directing the parties to file briefing—"either jointly or separately"—addressing six additional issues related to Defendant's sentencing, including issues pertaining to whether there is a factual basis for Defendant's plea. (ECF No. 42.) For present purposes, the relevant issue raised by the Court in the Order is "whether Defendant held the requisite mental state to violate 18 U.S.C. § 1957 and, specifically, that he 'knew that the property was obtained from some criminal offense.'" (ECF No. 42 at 1 (quoting *United States v. Rice*, 551 F. App'x 656, 662 n.4 (4th Cir. 2014)).) Defendant and the Government separately filed their responses to the Order on July 20, 2015, (ECF Nos. 45 & 48), and Defendant filed a supplemental response to the Order on July 21, 2015,[1] (ECF No. 49). Defendant is currently scheduled to be sentenced by this Court on August 31, 2015. (ECF No. 50.)

---

[1] In his supplemental briefing, Defendant joins with portions of the Government's briefing in response to the Order. (ECF No. 49.) However, Defendant does not join with the Government's position regarding the mens rea requirement of 18 U.S.C. § 1957. (*Compare id.* ("To the extent not inconsistent with . . . Defendant's response to Issue 2 and 5, . . . . Defendant joins in the response of the United States to Issues 1, 3, 4, and 6."), *with* ECF No. 48 at 2–13 (providing the Government's position as to Issue 2—whether "Defendant held the requisite mental state that he knew that the property was derived from some criminal offense").)

## II.  *Legal Standard*

Federal Rule of Criminal Procedure 11 provides that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "[T]he Rule ensures that the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (citing *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985), *cert. denied*, 475 U.S. 1029 (1986)). "The requirement to find a factual basis is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (quoting Fed. R. Crim. P. 11 advisory committee's notes (1966)).

"In determining whether a guilty plea has a factual basis, the district court need not rely only on the Rule 11 plea colloquy." *Id.* Rather, the court "may conclude that a factual basis exists from anything that appears on the record." *Id.* (quoting *DeFusco*, 949 F.2d at 120).

"[T]he district court . . . 'need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense.'" *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) (quoting *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997)). However, defendants do not have an "absolute right to have a guilty plea accepted," and the "court may reject a plea in exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "The trial court has wide discretion in determining whether a factual basis exists." *United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990) (citing *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir. 1988)).

### III. Discussion

Defendant pled guilty to a single-count Information, which alleges that he committed an unlawful monetary transaction in violation of 18 U.S.C. § 1957. (ECF No. 11 ¶ 2.) Section 1957 provides the following, in pertinent part:

> Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity . . . .

shall be guilty of an offense against the United States. 18 U.S.C. § 1957(a). For purposes of Section 1957, "the term 'criminally derived property' means any property constituting, or derived from, proceeds obtained from a criminal offense." *Id.* § 1957(f)(2).

"[S]ection 1957 prohibits a wider range of activity than money 'laundering,' as traditionally understood." *United States v. Wynn*, 61 F.3d 921, 927 (D.C. Cir. 1995) (citation omitted). Unlike its companion statute—18 U.S.C. § 1956—Section 1957(a) "prohibits engaging in monetary transactions in property from specified unlawful activity, and contains no requirement that the transaction be designed to conceal anything." *United States v. Allen*, 129 F.3d 1159, 1165 (10th Cir. 1997); *see also Wynn*, 61 F.3d at 926–27 ("[Section 1957(a)] differs from [S]ection 1956 in two critical respects: It requires that the property have a value greater than $10,000, but it does not require that the defendant know of a design to conceal aspects of the transaction or that anyone have such a design."). "[Section 1957(a)] is a powerful tool because it makes any dealing with a bank potentially a trap for the drug dealer or any other defendant who has a hoard of criminal cash derived from the specified crimes." *United States v. Rutgard*, 116 F.3d 1270, 1291 (9th Cir. 1997). *See generally United States v. Blair*, 661 F.3d 755, 776–77 (4th Cir. 2011) (Traxler, C.J., dissenting) (stating that "§ 1957 . . . [was] designed to 'make . . . drug dealers'

5

money worthless' by criminalizing transactions in which the participants knowingly give or accept money derived from unlawful activity" (quoting H.R. Rep. No. 99–855, at 13 (1986))). "As long as the underlying crime has been completed and the defendant 'possesses' the funds at the time of deposit, the proceeds cannot enter the banking system without a new crime being committed." *Rutgard*, 116 F.3d at 1291–92 (citation omitted).

To convict a defendant of a Section 1957(a) offense, the Government must prove the following elements beyond a reasonable doubt: "(1) that [the defendant] knowingly participated in a monetary transaction involving criminally derived property; and (2) that the criminally derived property was proceeds derived from specified unlawful activity." *United States v. Rice*, 551 F. App'x 656, 661 (4th Cir. 2014) (citing *United States v. Cherry*, 330 F.3d 658, 668 (4th Cir. 2003)); *see also* 18 U.S.C. § 1957(a) (providing the requirement that the "monetary transaction" have "a value greater than $10,000"); *United States v. Aramony*, 88 F.3d 1369, 1386 (4th Cir. 1996) (holding that "a *de minimis* effect on interstate commerce is an essential element of a § 1957 violation"); *cf. United States v. Richard*, 234 F.3d 763, 767 (1st Cir. 2000) ("Pursuant to [S]ection 1957(a), the government must show that [the defendant] (1) knowingly engaged or attempted to engage in a monetary transaction (2) in criminally derived property (3) of a value greater than $10,000 . . . and (4) derived from specified unlawful activity."). "The mens rea requirement under [Section 1957(a)] is only that the defendant knows that the monetary transaction involves 'criminally derived property.'" *Rice*, 551 F. App'x at 662 n.4 (quoting 18 U.S.C. § 1957(a)); *see, e.g.*, *United States v. Irvin*, 682 F.3d 1254, 1270 (10th Cir. 2012) (providing the mens rea requirement of Section 1957(a) as that the defendant had "knowledge that the property was derived from unlawful activity" (citation omitted)). Indeed, "the Government is not required to

6

prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity." 18 U.S.C. § 1957(c). Rather, "[a]ll the Government must prove is that the defendant knew that the property was obtained from some criminal offense." *Rice*, 551 F. App'x at 662 n.4. *See generally United States v. Bazazpour*, 690 F.3d 796, 801 (6th Cir. 2012) ("By attaching such a knowledge requirement to the 'monetary transaction,' the statute defines 'the criminal offense [such] that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983))).

The record in this case provides that Defendant "knew that paying the kickbacks [to Runyon] was wrong," (ECF No. 35 at 3), and he "believed that the payments to . . . Runyon were illegal, in that . . . Runyon was extorting him," (ECF No. 45 ¶ 14; *see also* ECF No. 11, Ex. B at 1–2 ("[Defendant], knowing that the payments were illegal and the Mountain Laurel contract was otherwise lucrative, agreed and did pay [Runyon] on a quarterly basis.")). However, Defendant's knowledge regarding the illegality of his payments to Runyon is not the relevant mens rea standard under Section 1957(a). Rather, the requisite mental state to sustain a guilty plea to a Section 1957(a) offense is whether Defendant knew the funds he used in the monetary transaction on or about January 30, 2013—i.e. the funds he received from Arch Coal pertaining to his contract at Mountain Laurel and allegedly arising out of his payments to Runyon—were "obtained from some criminal offense." *Rice*, 551 F. App'x at 662 n.4. The record does *not* reflect that Defendant held this requisite mental state. Indeed, Defendant provided the following statement on this topic:

> [Defendant] did not believe that the payments made by [Arch Coal] under the contract were criminal proceeds. [Defendant] did not consider the payments to be criminal proceeds, among other things, because he did not believe he was committing a crime by making the payments to . . . Runyon, [Defendant] did not

receive any benefit under the contract for making the payments to . . . Runyon, and the payments were made in compensation for the labor [Defendant's] company provided.

(ECF No. 45 ¶ 18; *cf.* ECF No. 11, Ex. B at 1–2 (providing Defendant's statement in the Stipulation of Facts that he knew "that the payments [to Runyon] were illegal").) This statement undoubtedly indicates that Defendant is attempting to walk a fine line regarding what he knew or believed regarding Arch Coal's payments to his company. Nonetheless, this statement provides Defendant's explicit position that he did not hold the requisite mental state to sustain a Section 1957(a) conviction. (*See* ECF No. 45 ¶ 18); *cf. Rice*, 551 F. App'x at 662 n.4 ("[T]he Government must prove is that the defendant knew that the property was obtained from some criminal offense.").

The Government concedes that "Defendant now states that he did not believe that the payments received under the contract were criminal proceeds." (ECF No. 48 at 7.) However, the Government urges the Court to "infer [Defendant's] knowledge and intent from other evidence," (*id.*), including the following: (1) Defendant's "participation in the underlying specified unlawful activity," (*id.* at 4–6, 8); (2) Defendant's admissions that he "knew that the kickback payments were illegal" and "that paying the kickbacks was wrong," (*id.* at 7–8 (citations omitted)); (3) "[c]ircumstantial evidence regarding [Defendant's] role in and knowledge of a specified unlawful activity," (*id.* at 6, 9–11); and (4) Defendant's "post-scheme conduct," (*id.* at 11–13).

The Court is not persuaded by these arguments. In *United States v. Barbeito*, this Court provided the following pertinent statement regarding its factual-basis analysis:

> The principle followed by the undersigned is that there must be some undisputed factual assertion in the record that supports each element of the offense. This is by no means an onerous burden. The record need not prove each element beyond a reasonable doubt, but each element must be directly addressed. . . . Moreover, the

8

> Court will not infer that an essential element has been established if no factual assertion in the record directly supports such a conclusion or if only vague assertions are made which generate uncertainty as to the factual basis.

Criminal Action No. 2:09–cr–00222, 2010 WL 2243878, at *4 (S.D. W. Va. June 3, 2010). In this case, the record is lacking as to any evidence directly establishing Section 1957(a)'s mens rea requirement. Furthermore, the positions of the parties raise substantial doubt regarding whether there is a factual basis as to the mens rea element of Section 1957(a). (*See, e.g.*, ECF No. 45 ¶ 18; ECF No. 48 at 7.) Indeed, Defendant contends that he lacked the requisite mens rea. (*See* ECF No. 45 ¶ 18.) The Court declines the Government's invitation to infer that Defendant held the requisite mental state to commit a Section 1957(a) offense when he maintains that this required element is not satisfied. *See, e.g.*, *Barbeito*, 2010 WL 2243878, at *4; *see also United States v. Mastrapa*, 509 F.3d 652, 661 (4th Cir. 2007) ("[A] district court . . . accepting a guilty plea from a defendant who did not admit to an essential element of guilt under the charge . . . would surely cast doubt upon the integrity of our judicial process . . . ."). *See generally United States v. Mouzon*, 295 F. App'x 607, 609 (4th Cir. 2008) ("A district court may not conclude that there is a factual basis for a plea if an essential element of the offense is not admitted by the defendant or established in the evidence presented by the Government." (citation omitted)).

Simply put, factual disputes are to be resolved through trial. As the factual disputes in this case relate to essential elements, they have no place in a guilty plea setting. This Court will only accept guilty pleas when the facts supporting each essential element are agreed upon, or at least undisputed. (*Cf.* ECF 48 at 3 ("This Court has followed [the] principle that 'there must be some undisputed factual assertion in the record that supports each element of the offense.'" (quoting

9

*United States v. Tomblin*, Criminal Action No. 2:10–cr–00130, 2011 WL 829268, at *2 (S.D. W. Va. Mar. 7, 2011)))).)

As discussed above, the record does not reflect that Defendant held the requisite mental state to sustain his guilty plea to an 18 U.S.C. § 1957(a) offense. Accordingly, the Court finds the factual basis in this case lacking and will not accept Defendant's plea. *See, e.g.*, *United States v. Douglas*, 213 F.3d 633, at *1 (4th Cir. 2000) ("[I]f an insufficient factual basis for essential elements of the charge was not shown, the acceptance of a plea by the district court constitutes an abuse of discretion." (citation omitted)). *See generally Tomblin*, 2011 WL 829268, at *2 ("[T]he Court must ensure that the facts establish each element of the crime with which the defendant is charged." (citing *McCarthy v. United States*, 394 U.S. 459, 467 (1969))).

### IV.  Conclusion

For the reasons discussed above, the Court **FINDS** that there is not a factual basis for Defendant's plea. Accordingly, the Court **REJECTS** Defendant's plea. The Court therefore **CANCELS** the sentencing hearing scheduled for August 31, 2015, at 2:00 p.m.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:     August 18, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

10